**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| BENOIT NSABIMANA, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:24-cv-212 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| PSA AIRLINES, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

---

**ENTRY AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (DOC. NO. 19)**

---

Now before the Court is Defendant's Motion for Summary Judgment (Doc. No. 19) and Defendant's Memorandum of Law in Support of its Motion for Summary Judgment (Doc. No. 20) (together, the "Motion").  Plaintiff Benoit Nsabimana ("Nsabimana") was discharged from his position as a mechanic with Defendant PSA Airlines, Inc. ("PSA"), following an incident involving the emergency return of a PSA airplane.  (Doc. No. 1 at PageID 2.)  Nsabimana has since brought suit against PSA claiming that his termination was the result of race and national origin discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*  (Doc. No. 1 at PageID 3.)  By way of its Motion, PSA now argues for summary judgment on the ground that Nsabimana can point to no similarly situated PSA employees who were treated better than he was.  (Doc. No. 20 at PageID 70-71.)  Because Nsabimana must make such a showing to establish a *prima facie* case of employment discrimination, PSA submits that Nsabimana's failure in this regard requires dismissal of his pending claims.  (*Id.*)  For the reasons discussed below, the Court has decided to **GRANT** PSA's Motion.

1

I.      **BACKGROUND**

In short, this matter concerns the conditions of Nsabimana's former employment with PSA—namely, Nsabimana's final discharge from said employment in May of 2024.  (*See* Doc. No. 1 at PageID 2; *see also* Doc. No. 20-1 at PageID 156.)  On around November 11, 2023, Nsabimana was manning a gate intended for PSA aircraft, when Scott Stewart ("Stewart"), a lead mechanic at PSA, called for Nsabimana's assistance.  (Doc. No. 20-1 at PageID 105.)  Stewart apparently asked Nsabimana whether he had worked on an airplane's ground valve before.  (*Id.*)  When Nsabimana stated he had not, Stewart brought him along to help repair a ground valve that needed maintenance.  (*Id.*)  Stewart then instructed Nsabimana how to repair a ground valve and left Nsabimana to do so.  (*Id.*)  Nsabimana later reported he was finished with his task, Stewart signed off on the maintenance performed, and the aircraft eventually took flight from PSA's hangar.  (*Id.* at PageID 105-07; Doc. No. 20 at PageID 64-65.)  The plane was forced to make an emergency return shortly after departure though.  (Doc. No. 20-1 at PageID 107.)  Upon return, it was found that the aircraft's ground valve had not been properly closed when Nsabimana completed his maintenance.  (*Id.*)  This incident then led to Nsabimana's ultimate termination of employment, after PSA found that Nsabimana failed to utilize his maintenance manual when working on the ground valve.  (*Id.* at PageID 155-56.)

Otherwise, Nsabimana's employment with PSA was largely uneventful, even if Nsabimana was not particularly satisfied.  PSA hired Nsabimana, a Rwandan immigrant to the United States, as an airplane mechanic in 2019.  (Doc. No. 20-1 at PageID 107-08.)  Upon his hiring, Nsabimana underwent a training period of approximately nine months.  (*Id.* at PageID 112.)  He claims that other employees were approved to come off of their training period more expeditiously, but he cannot provide any details on the matter, save for hearsay.  (*Id.*)  Regardless, Nsabimana completed

his training period and worked for PSA for the next three years or so, until his termination.  (*Id.*) Throughout his tenure at PSA, Nsabimana was able to bid on shift schedules, exercise his collective bargaining rights when he needed additional training, and had the opportunity to interview for a lead mechanic position.  (*Id.* at PageID 114-15, 120.)

In any event, Nsabimana began pursuing his instant claims of discrimination shortly after his firing.  He filed a formal charge of national origin discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC") on May 11, 2024.  (*Id.* at PageID 204-05.)  The EEOC subsequently notified Nsabimana that it would discontinue its investigation of his claim and advised Nsabimana of his right to sue, on May 14, 2024.  (*Id.* at PageID 203.)  Nsabimana filed his Complaint With Jury Demand (the "Complaint") (Doc. No. 1) in this matter on August 2, 2024.  Therein, he alleges two causes of action: national origin discrimination, in violation of Title VII of the Civil Rights Act of 1964; and, race discrimination, also in violation of Title VII.  (Doc. No. 1 at PageID 3.)

Following discovery, on December 19, 2025, PSA filed its current Motion.  (Doc. Nos. 19 and 20.)  Nsabimana responded to PSA's Motion, after two extensions of time, on January 28, 2026 (Doc. No. 24), and PSA submitted an otherwise timely reply brief in support of its Motion on February 11, 2026 (Doc. No. 25).  As such, the Court considers PSA's Motion to be ripe for review and decision.

## II.  <u>STANDARD OF REVIEW</u>

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought" and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment has

the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, affidavits or sworn declarations, and admissions on file, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(a), (c).

The burden then shifts to the non-moving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id*. at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id*. at

255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014).  However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment.  *Anderson*, 477 U.S. at 252.  "There must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Id*.  The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict.  *Id*.

### III.  ANALYSIS

As a preliminary matter, the Court addresses PSA's position that Nsabimana cannot maintain a cause of action for race discrimination because he did not file a charge of race discrimination with the EEOC or the OCRC.  (*See* Doc. No. 20 at PageID 62.)  At first glance, PSA would appear to be correct.  But, in his charge of national origin discrimination, Nsabimana did attempt to propose a comparator, specifically identifying the proposed comparator as "a white American."  (Doc. No. 20-1 at PageID 205.)  While this certainly does not evince a diligent prosecution of Nsabimana's claims, the Court will construe the reference to race in Nsabimana's favor and consider his allegations of race discrimination on their merits.

Though, before reaching the merits in earnest, the Court sets out the appropriate legal framework to use in analyzing Nsabimana's claims of race and national origin discrimination.  Fundamentally, Title VII of the Civil Rights Act of 1964 makes it unlawful for any employer to "discharge any individual … because of such individual's race … or national origin."  42 U.S.C. § 2000e-2(a)(1).  Further, if an individual such as Nsabimana believes he was discharged by his employer based on race or national origin, he may file suit in the district court, so long as he has exhausted his administrative remedies.  42 U.S.C. § 2000e-5(f).

When a plaintiff relies on circumstantial evidence to prove his claim of discrimination under Title VII, as Nsabimana does here, courts consider that claim using the burden shifting

framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).  Pursuant to *McDonnell Douglas* the "plaintiff has the initial burden of demonstrating" the elements of his claim.  *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 727 (6th Cir. 2007).  In other words, the plaintiff must first establish a *prima facie* case of discrimination.  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006).  If the plaintiff succeeds, then "the burden of production shifts to the employer to identify a legitimate, nondiscriminatory reason for the termination."  *Sullivan v. Coca-Cola Bottling Co.*, 182 F. App'x. 473, 477 (6th Cir. 2006) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  If the employer does so, then the burden shifts back to the plaintiff to prove "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Id.*  "Throughout the analysis, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  *Id.*

To establish a *prima facie* case of employment discrimination under Title VII, the plaintiff must demonstrate: "1) he is a member of a protected class; 2) [he] was qualified for the job; 3) he suffered an adverse employment decision; and 4) [he] was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees."  *Newman v. Fed. Exp. Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) (citing *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)).  At bar, PSA does not dispute Nsabimana's ability to satisfy the first three of these four elements.  Specifically, PSA concedes that Nsabimana is a black man of Rwandan national origin, that PSA's termination of Nsabimana constitutes adverse employment action, and

6

that Nsabimana was otherwise qualified to serve as an airplane mechanic for PSA. (Doc. No. 20 at PageID 70.)

Instead, PSA claims Nsabimana has failed to adduce evidence which would allow a reasonable factfinder to infer that Nsabimana was treated differently than similarly situated employees.[1] (*Id.* at PageID 70-71.) By this token, PSA argues that Nsabimana's only proposed comparator—about whom a jury could glean any facts—is Stewart, a lead mechanic for PSA. (*Id.* at PageID 70.) Broadly speaking, PSA posits that Nsabimana cannot be similarly situated to Stewart because the two did not engage in similar behavior. (*Id.*)

Nsabimana responds by stating that he was in fact similarly situated to Stewart and other PSA employees, and, therefore, the Court should find a dispute of material fact to defeat summary judgment. (*See* Doc. No. 24 at PageID 217.) But, Nsabimana offers few, if any, facts to support his position. Nsabimana's counsel quite characteristically conducted no discovery in this matter, instead forcing Nsabimana to proceed on summary judgment with no more than the allegations in the Complaint and Nsabimana's own testimony. Nevertheless, the Court considers whether Nsabimana was similarly situated to any of his PSA colleagues, making use of the few facts available.

The Sixth Circuit has held that individuals with whom a "plaintiff seeks to compare [his] treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d 577 (citations omitted). "These factors generally are relevant considerations in cases alleging differential disciplinary action." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352

---

[1] Nsabimana does not allege that he was replaced by someone outside his protected classes.

(6th Cir. 1998) (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). Still, "other factors may also be relevant, depending on the facts of each case." *Johnson v. Ohio Dep't. of Pub. Safety*, 942 F.3d 329, 331 (6th Cir. 2019) (citing *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 610 (6th Cir. 2019)).

By all accounts, a plaintiff need not demonstrate that he was identically situated to a comparator in every conceivable way. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 777 (6th Cir. 2016) (citing *Ercegovich*, 154 F.3d at 352). "Rather, the plaintiff and the employee with whom the plaintiff seeks to compare himself [] must be similar in all of the relevant aspects." *Id.* (cleaned up) (internal quotation marks omitted). For example, "[d]ifferences in job title and responsibilities, experience, and disciplinary history may establish that two employees are not similarly situated." *Campbell v. Hamilton Cnty.*, 23 F. App'x. 318, 325 (6th Cir. 2001) (citing *Pierce*, 40 F.3d at 802; *Gore v. Runyon*, 113 F.3d 1234 (6th Cir. 1997); *Martin v. The United States Playing Card Co.*, 172 F.3d 48 (6th Cir. 1998)).

In the matter at hand, Nsabimana's attempt to compare himself to Stewart is doomed by an utter dearth of facts. It is undisputed that Stewart was a lead mechanic, whereas Nsabimana was a regular line mechanic. Otherwise, the Court can only determine that the role of a lead mechanic is likely similar to that of a regular mechanic in some respects and different in others. Whether the two positions are similar in all relevant aspects, though, has not been adduced here. Even assuming *arguendo* that Nsabimana and Stewart held similar positions, it is also unclear whether the two men engaged in similar conduct, for which Nsabimana was terminated and Stewart was not. Recall that Nsabimana was not simply discharged for performing incomplete airplane maintenance; he was terminated for failing to utilize his maintenance manual when performing maintenance that resulted in an emergency incident. There is no evidence to suggest that Stewart

8

also failed to consult his maintenance manual when serving as a lead mechanic to Nsabimana. If such basic factual questions cannot be answered on the evidence presented—and, indeed, they are not—Nsabimana cannot be compared to Stewart or any other PSA employee for purposes of establishing a *prima facie* case of discrimination. Thus, the Court finds that Nsabimana is not similarly situated to Stewart.

Neither can Nsabimana be compared to any of his other PSA colleagues. Throughout his testimony, Nsabimana points to perceived slights that he purportedly suffered during the course of his PSA employment. He also names several individuals as other mechanics who were treated better than he was. Yet, none of Nsabimana's perceived slights amount to adverse employment action. Further, the Court cannot so much as independently verify that Nsabimana's proposed comparator-colleagues exist. No written discovery was issued to PSA for such individuals and Nsabimana questioned no witnesses in the course of discovery. As such, Nsabimana is unable to establish that he is similarly situated to PSA employees apropos of Stewart.

In all, Nsabimana has, generously speaking, offered no more than a mere scintilla of evidence to show that a non-protected PSA comparator was treated better than he was following the emergency incident in November of 2023. Therefore, the Court finds that Nsabimana has failed to make out a *prima facie* case of either race or national origin discrimination here.

## IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 19). The Court therefore **DISMISSES** Nsabimana's Complaint With Jury Demand (Doc. No. 1) and directs the Clerk to **TERMINATE** this matter on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, March 10, 2026.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE